*PREVIOUSLY FILED WITH CSO AND*
*CLEARED FOR PUBLIC FILING*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                                    )
ABD AL GHALIB AHMAD                        )
ALHAG,                                              )
     *Petitioner/Plaintiff*,                       )
                                                    )
*v.*                                                )     Civil Action No. 05-cv-2199 (HHK)
                                                    )
                                                    )
GEORGE W. BUSH, *et al.*,                      )
     *Respondents/Defendants*.                )
———————————————————————)

## OPPOSITION TO RESPONDENTS' MOTION TO DISMISS, MOTION FOR A STAY-AND-ABEY ORDER, AND NOTICE OF INTENT TO FILE PETITION UNDER THE DETAINEE TREATMENT ACT

Petitioner opposes Respondents' Motion to Dismiss and respectfully requests that this Court, in the interests of justice, stay the dismissal of this case pending Petitioner's exhaustion of remedies in the Court of Appeals under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat 2680 (2005) ("DTA"). Petitioner further respectfully requests that the Court hold this action in abeyance pending Petitioner's exhaustion of those remedies and resolution by the Supreme Court of a renewed certiorari petition to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), or the Supreme Court's resolution of the same jurisdictional issue, as presented in an original habeas petition in *In re Ali*, No. 06-1194. Finally, Petitioner notifies this Court of his intent to file a petition under the DTA in the Court of Appeals for the District of Columbia Circuit.

    Respondents' Motion to Dismiss is based on an erroneous interpretation of the Court of Appeal's split decision in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), and on an inaccurate reading of the split commentary by the Justices of the Supreme Court on the denial of certiorari in that case, 127 S. Ct. 1478 (2007). As established by the split *Boumediene* opinions and in light of the important questions deferred pending exhaustion, Petitioners' claims to habeas

2254126.04

jurisdiction are substantial, especially given that this Court had jurisdiction at the time of filing under *Rasul v. Bush*, 542 U.S. 466 (2004).

At the time of Petitioner's filing, this Court had jurisdiction to review the grounds for detention, as the Supreme Court held in *Rasul v. Bush,* 542 U.S. 466 (2004). Respondents claim that subsequently-enacted statutes deprive the District Courts of jurisdiction, a position that Petitioner contests based on an array of factual and legal arguments. Respondents now request that all orders protecting Petitioner in this matter—including orders allowing counsel access— should be vacated and seek dismissal of this petition, without allowing Petitioner the opportunity to persuade this Court that this case is viable and to make a record for appellate review.

Respondents' position is untenable for six reasons: (1) *Boumediene v. Bush*, 127 S. Ct. 1478 (2007), is neither final nor dispositive given the statements of Justices Stevens and Kennedy regarding the need to exhaust remedies before the Supreme Court will grant certiorari; (2) the correct procedure for addressing a pending habeas corpus petition while remedies are exhausted is for the district court to stay and hold the proceedings in abeyance pending exhaustion, *see Rhines v. Weber*, 544 U.S. 269 (2005); (3) while the Supreme Court rules on the jurisdictional questions, the lower courts have "authority, from the necessity of the case, to make orders preserv[ing] the existing conditions and the subject of the petition," *United States v. United Mine Workers*, 330 U.S. 258, 290-91 (1947); (4) the authority relied upon by Respondents is limited to frivolous jurisdictional claims, not the important constitutional issues raised by statutes that purport to divest the federal courts of habeas corpus jurisdiction; (5) the stay-and-abey procedure is particularly appropriate given the need for orders by the District Courts to "ensure that the office and purposes of the writ are not compromised;" and (6) Petitioner is not bound by the record established to date in *Boumediene*.

      1.      **_Boumediene_ Is Neither Final Nor Binding: The Denial Of Certiorari Was Based In Part On The Failure To Exhaust Remedies, Which Are Still Available To Petitioner And Are Being Exercised By Petitioner.**

On February 20, 2007, a split panel of the D.C. Circuit Court of Appeals decided combined cases involving non-U.S. nationals detained at Guantánamo, finding that post-*Rasul* statutes deprived courts of jurisdiction. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Because the petitioners in that case declined to seek review directly with the Court of Appeals under §1005(e) of the DTA, that Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994. The petitioners then sought a writ of certiorari. On April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement from two other Justices respecting the denial of certiorari. *Boumediene v. Bush*, 127 S. Ct. 1478 (2007).

Justices Kennedy and Stevens found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." But the Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in denial of certiorari)).

Respondents' reliance on *Boumediene* is misplaced, for at least three reasons. First, Justice Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk,* 321 U.S. 114 (1944), supports maintenance of this case while Petitioner exhausts his DTA remedy. Second, the critical jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S. Ct. at 1478 (Stevens and Kennedy, J.J.) (citing *Rasul*, 542 U.S. at 480-81).

Third, Justice Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of alternative remedies contemplates an underlying habeas corpus case in which a petitioner can present such arguments to the District Court and, if necessary, the Court of Appeals and the Supreme Court.

     a.     *The Court of Appeals And Justices Stevens and Kennedy Have Adopted The Exhaustion Of Remedies Model For Habeas Relief.*

The Court of Appeals' ruling in *Boumediene* does not control here because, unlike the petitioners in that case, Petitioner is in the process of exhausting his remedies under the DTA. The Court of Appeals expressly predicated its dismissal of the *Boumediene* petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Similarly, Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*.

The citation to *Hawk* is instructive. In that case, petitioner sought federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of state remedies had not been established. The Supreme Court not only applied the exhaustion rule but also held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated…. But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy,… or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate…, a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

4

*Ex parte Hawk,* 321 U.S. at 118 (citations omitted).  This exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court.  Only in this way would the ultimate issues be preserved for appellate and Supreme Court review.

      b.      *The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.*

Respondents' claims regarding *Boumediene* ignore the rule that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S. Ct. at 1478.  As the three dissenting Supreme Court Justices and Judge Rogers observed, the constitutional ramifications of a statute that purports to strip federal courts of jurisdiction over existing habeas corpus petitions are profound and of obvious importance.  With the addition of Justices Stevens and Kennedy's statement, the facts and arguments in this petition should be fully considered after Petitioner has exhausted his DTA remedy.  The *Boumediene* case does not finally resolve the jurisdictional questions in this case.  In fact, given that the mandate has not issued in *Boumediene* and the cases are still subject to motions and briefing, these issues have not even been finally decided for the *Boumediene* petitioners.

      c.      *The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Is Determined.*

Cases regarding the suspension and elimination of the writ of habeas corpus require examination of any alternative remedies to determine whether they provide protection coextensive with the Great Writ.  *See Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.").  The *Boumediene* statement on certiorari clearly indicated, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate," the Court is prepared to address the merits

5

of the habeas corpus claims. *Boumediene*, 127 S. Ct. at 1479 (statement of Stevens & Kennedy, J.J.). Further, the Court stated that, in the interim, the Respondents should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id*. By maintaining the present case in the District Court, the Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id.* In this way, the exhaustion model from the *Boumediene* litigation requires that the District Court proceeding remain in place for potential post-exhaustion litigation.

>        2.     **Because Exhaustion Of Remedies Is Available To Petitioner, The District Courts Have Discretion To Enter Stay-And-Abey Orders.**

Given the requirement that Petitioner exhaust his remedies under the DTA, the proceedings in this action should be stayed and held in abeyance pending completion of Petitioner's DTA action in the Court of Appeals. In *Rhines v. Weber,* the Supreme Court explicitly approved a stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings. 544 U.S. at 278. The *Rhines* petitioner filed, in federal court, a mixed habeas petition that contained both claims already exhausted in the state court system as well as unexhausted claims. In light of the serious procedural consequences to petitioner of dismissal, the Court found that district courts have discretion to stay a federal habeas corpus case and hold it in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions that mandate a stay-and-abey approach. In the absence of intentional dilatory tactics by the petitioner, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss" a petition where the petitioner has good cause for the failure to exhaust other remedies and the unexhausted claims are potentially meritorious. *Rhines*, 544 U.S. at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). The conditions under which failure to stay-and-abey the petition would constitute an abuse of discretion—no deliberate delay, good cause, and potentially meritorious claims—are

abundantly present here.  Petitioner did not previously file a DTA petition in the Court of

Appeals for good reason:  Petitioner reasonably believed—and still believes—that the DTA is

unconstitutional.  Unlike the death penalty cases that caused the Supreme Court concern in

*Rhines*, every day of delay prejudices Petitioner.[1]

There is also good cause for Petitioner's failure to exhaust until now: the unexhausted

DTA remedy did not exist until after this habeas corpus petition was filed.  Further, the DTA

procedure did not purport to provide the habeas relief to which Petitioner was entitled at the time

this habeas action was filed.  In *Pace v. DiGuglielmo*, the Supreme Court noted that potential

confusion regarding state remedies required equitable protections.  544 U.S. at 416.  Guantánamo

detainees like Petitioner face even greater complexities and risk of confusion.  The questions left

open by the Supreme Court's decision in *Rasul*, which established a right to proceed under 28

U.S.C. § 2241 at the time Petitioner filed this action, and by the subsequent DTA and Military

Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (Oct. 17, 2006) ("MCA"), have

created substantial uncertainties.  Petitioner did not even have the potential DTA remedy prior to

October 2006, because, as the Supreme Court held, the DTA did not apply retrospectively to

habeas corpus petitions filed before the effective date of the statute.  *Hamdan v. Rumsfeld*, 126

S.Ct. 2749, 2762-69 (2006).

Respondents attempt to distinguish *Rhines* fails.  The exhaustion required by *Hawk*

operates as does the exhaustion required by the statute in *Rhines*.  Further, the procedural

obstacles that would be created by dismissal under 28 U.S.C. § 2254 are no different—although

perhaps even more profound—than those facing detainees in Guantánamo, who would be cut off

---

[1]     Three Justices concurred in *Rhines*, stating that stay-and-abey is required in the absence
of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring,
joined by Justices Ginsburg and Breyer).

2254126.04

from contact with their lawyers. *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

**3.      The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.**

In the statement accompanying the *Boumediene* order denying certiorari, Justices Stevens and Kennedy wrote: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. 1478 (2007) (Justices Stevens and Kennedy, statement respecting the denial of certiorari). The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while a question is under consideration, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). The D.C. Circuit has not hesitated to apply the same principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." . . . Clearly there was "power to preserve existing conditions while . . . determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting *United Mine Workers*). This Court should carefully protect the status quo by maintaining the orders entered to date to assure Petitioner is not prejudiced in his ability to litigate his DTA actions; to preserve potential remedies before this Court; and to protect Petitioner's access to counsel.

The Supreme Court's denial of certiorari in *Boumediene* leaves unanswered numerous predicate questions necessary to deciding issues in Petitioner's case, including the following:

2254126.04

Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus?  If not, has the writ been unconstitutionally suspended or eliminated? Are the MCA and the DTA inapplicable given Petitioners' jurisdictional arguments regarding the absence of initial military jurisdiction, which would foreclose a Combatant Status Review Tribunal from constituting a competent tribunal to render any decision regarding Petitioner?  Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised"? (*See Boumediene,* 127 S. Ct. 1478 (2007)).

Respondents' motion to dismiss should be denied because the Court has insufficient information to answer a number of questions that the DTA proceedings will answer.  Further, if this Court eventually reaches the jurisdictional and constitutional questions and rules adversely to Petitioner, there must be an adequate record for appellate review by the Court of Appeals and, if necessary, by the Supreme Court, all of which requires that these actions remain in place until after Petitioner has exhausted his DTA remedy.  During that process, Respondents should be foreclosed from prejudicing Petitioner's ability to litigate these questions in this Court and the Court of Appeals.[2]

---

[2]      Moreover, the Court of Appeals' *Boumediene* decision does not impair the power of this court to preserve the status quo. Respondents erroneously cite *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance.  But the case actually says the opposite:  the majority ruled in *Ayuda* that a stay *was* appropriate.  Respondents cite a concurring opinion only, and, in that opinion, the concurring Judge ultimately *agreed* with the majority, which rejected the proposition that the court lacked power to enter a stay.  *See Ayuda*, 919 F.2d at 153.  The other concurring and dissenting opinion correctly articulated the applicable law: until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

**4.     Respondents' Main Case On Jurisdiction Only Applies To Frivolous Claims, Not The Substantial Issues Addressed In The Present Case.**

Respondents place primary reliance on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), for the unremarkable proposition that jurisdiction is a threshold question.  But Respondents ignore the preceding language in *Steel Co.* that actually supports this Court's jurisdiction to maintain the action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court.

The starting point of *Steel Co.* is that "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.' ...unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" 523 U.S. at 90 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)).  Only when the Supreme Court has made an adverse ruling on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy."  *Id*. at 90 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974) (emphasis added)).  The *Boumediene* denial of certiorari is emphatically *not* a ruling on the merits.

Petitioner's jurisdictional arguments are plainly not frivolous: courts have been split on the constitutional questions at each step of the litigation:  the District Courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari.  Seldom has this country faced weightier questions about the meaning of our

10

Constitution.  In light of these issues, the very case upon which Respondents rely establishes that Respondents' Motion to Dismiss should be denied while Petitioner's remedies are exhausted.

Ironically, Respondents' own Motion recognizes the Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed.  In footnote 15, Respondents argue that the protective order should survive dismissal, citing *United States v. United Mine Workers*, 330 U.S. 258 (1947) (Motion at 8-9).  As argued *supra* at 8, *United Mine Workers* establishes that the District Court has the authority throughout the litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised."

This Court retains the power to decide its own jurisdiction in the first instance.  *See Kircher*, 126 S. Ct. at 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002).  While the efficacy of the DTA remedy is still being determined, it would be premature for this Court to determine the dispositive questions.  Instead, this Court should first follow the stay-and-abey norm established in *Rhines*, then, if the case is not mooted by the DTA proceedings, provide Petitioner the opportunity to make a records, present claims, and obtain a decision based on the facts and law of Petitioner's case.

**5.**     **The Protective And Other Procedural Orders Are Necessary To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."**

Dismissal of these District Court proceedings, with its protective order and ruling on the filter team, would constitute exactly the type of prejudice to Petitioners' ability to litigate that Justices Kennedy and Stevens instructed the courts to prevent.  This Court's orders on access to counsel and the filter team should remain intact pending exhaustion of Petitioner's DTA remedies.

11

Respondents complain that the very protective order to which they previously agreed is onerous, and now suggest that it should be renegotiated and replaced in the Court of Appeals. (Motion at 9-11). Yet the District Courts have successfully supervised the existing protective order for almost two years. The current protective order incorporates remedies for Respondents to exhaust, up to and including contempt and criminal prosecution. Even if there had been problems with the current protective order, which there have not, Respondents' failure to exhaust the available remedies should foreclose action based on Respondents' complaints. Respondents' desire to substitute protective orders is not a reason to dismiss these actions instead of following the Supreme Court-approved stay-and-abey procedure.

Respondents argue that the stay-and-abey relief requested here "contemplates that various orders of the Court, including the protective order imposing a counsel access regime and any orders requiring advance notice of any transfer of detainees from Guantánamo, would remain extant and enforceable, effectively imposing Court-ordered obligations where the Court has no jurisdiction to act." Mot. at 7-8 (footnotes omitted). Respondents further contend that, as a result of the Court of Appeals' decision in *Boumediene,* this Court must promptly dismiss this case and that "prompt dismissal of these cases…would bring this Court's counsel access regime to an end." *Id.* at 10.

Contrary to Respondents' claim, dismissal of this case would *not* result in the automatic dissolution of the protective and injunctive orders entered by the Court. As the Court recognized in *Adem v. Bush,* 425 F. Supp.2d 7, 20 (D.D.C. 2006), the "Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba,"[3] first entered in 2004, and like all protective orders directed to future events, survives dismissal of this case and may be modified, enforced, or dissolved only by separate

---

[3]     *See In re Guantánamo Detainee Cases,* 344 F. Supp.2d 174 (D.D.C. 2004).

order of the Court.  *See Gambale v. Deutsche Bank AG,* 377 F.3d 133, 140-41 (2d Cir. 2004);

*Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 535 (1st Cir. 1993); *United Nuclear Corp. v.*

*Crawford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Group,* 858

F.2d 775, 780-82 (1st Cir. 1998); *Marshall v. Planz,* 347 F. Supp.2d 1198, 1201 (M.D. Ala.

2004); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.,* 191 F.R.D. 495, 499 (D. Md. 2000).  Indeed,

this Court expressly "retain[ed] continuing jurisdiction to enforce or modify the terms of [the

Amended Protective] Order."[4]

Similarly, injunctive decrees directed at future events, such as the orders entered by the

Court requiring preservation of government records and counsel papers, survive dismissal of this

case and may be modified, enforced, or dissolved only by separate order of the court.  *See United*

*States v. Swift & Co.,* 286 U.S. 106, 114 (1932); *Cobell v. Norton,* 392 F.3d 461, 467 (D.C. Cir.

2004); *Gilmore v. People of the State of California,* 220 F.3d 987, 1007 (9th Cir. 2000); *Dahlen*

*v. Kramer & Machine Engineering Products Co.,* 303 F.2d 293, 295 (10th Cir. 1961); *State*

*Police for Automatic Retirement v. Difava,* 164 F. Supp.2d 141, 156 (D. Mass. 2001); *EEOC v.*

*Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers,* 855 F. Supp. 488, 491-

92 (S.D.N.Y. 1994).

Although Respondents are aware of at least some of these precedents, they wrongly

interpret them to mean only that "certain requirements of this Court's Protective Order, *i.e.,*

requirements pertaining to the handling of classified and 'protected' information appropriately,

retain vitality beyond the required dismissal of these cases."  Mot. at 8-9 n. 15.  In other words,

Respondents contend that only those portions of this Court's protective and injunctive orders that

they like—because they constrain the prisoners' counsel—survive dismissal, but that those

portions they do not like—because they constrain the government—do not.  Respondents cite no

---

[4]      344 F. Supp.2d at 176.

authority (and Petitioners are aware of no authority) that would support such cherry-picking from this Court's orders. *Cf. SRS Technologies, Inc. v. Physitron, Inc.,* 216 F.R.D. 525, 526 (N.D. Ala. 2003) (rejecting plaintiff's assertion that, under protective order in effect after settlement of underlying lawsuit, plaintiff "should not be allowed virtually unrestricted access to and use of confidential documents produced by the Defendants, but that the protective order should remain in full force to protect Plaintiff's documents."). The cases cited above show that the protective and injunctive orders entered by the Court survive dismissal in their entirety, unless and until they are modified or dissolved by separate order of the Court.

Moreover, equitable principles dictate that the Court may not dissolve the protective and injunctive orders entered in this case without first holding an evidentiary hearing at which the parties are both heard. *See Hodge v. Dep't of Housing and Urban Development,* 862 F.2d 859, 861 (11th Cir. 1989). Respondents would bear the burden of showing why the orders, or portions thereof, should be dissolved. *See SRS Technologies,* 216 F.R.D. at 529-31; *Lee Shuknecht & Sons v. P. Vigneri & Sons, Inc.,* 927 F. Supp. 610, 614-16 (W.D.N.Y. 1996); *Grundberg & Upjohn Co.,* 140 F.R.D. 459 (D. Utah 1991); *SEC v. Samuel H. Sloan & Co.,* Nos. 71 Civ. 2695 (RJW), 74 Civ. 5729 (RJW), 1991 WL 173730 (S.D.N.Y. Aug 29, 1991). This is so even where, as here, intervening legislation has affected the Court's jurisdiction. *See Miller v. French,* 530 U.S. 327, 345-48 (2000). Respondents have not moved to dissolve the protective and injunctive orders entered in this case. Nor has the Court held an evidentiary hearing on this issue. Therefore, to the extent that the Motion to Dismiss seeks to dissolve the protective and injunctive orders, the motion should be denied as premature.

Petitioner's access to counsel is critical. For this reason, the protective order should remain intact, especially given that the Court of Appeals would have the option of continuing to administer the DTA litigation under the auspices of this Court's orders.

2254126.04

6. ***Boumediene* Does Not Establish The Record To Which Petitioner Should Be Bound; Other Legal Theories May Be Available On The Facts Of Petitioner's Case.**

Respondents' request for dismissal on the basis of the Court of Appeals' ruling in *Boumediene* fails to recognize the unique factual settings and resulting legal issues faced by Petitioner. The *Boumediene* cases involve certain allegations and legal theories; those cases do not control all the potential issues to be raised by Petitioners in this action. See *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting stare decisis effect of cases where constitutional issue was not raised or resolved). The most basic distinction from *Boumediene* is that the scope and efficacy of the DTA remedy is being tested and will provide this Court necessary information that will only be known once Petitioner has exhausted his DTA remedy. Until then, the factual predicate for evaluation of the legal issues is lacking, rendering this case unripe for the fully developed review anticipated by Justices Kennedy and Stevens in the *Boumediene* statement accompanying the denial of certiorari.

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory withdrawal of federal court jurisdiction that existed at the filing of the habeas petitions under *Rasul*. Post-exhaustion litigation, if not mooted by relief granted under the DTA, would likely involve legal approaches that the *Boumediene* majority did not address and resolve. If the Supreme Court's decision in *Rasul* means anything, the constitutional validity of the DTA must be determined in light of the post-DTA litigation about to ensue and address Petitioner's unique claims, including challenges under the bill of attainder, equal protection, due process, suspension, and ex post facto clauses of the Constitution.

2254126.04

## CONCLUSION

Petitioner's habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits as to the effect of the DTA and MCA, and Petitioner has not had his individual facts and legal arguments heard.  Under governing Supreme Court precedent, the Court should preserve the status quo while Petitioner's DTA claims are litigated.  Under *United Mine Workers*, the Court has "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition."  Under *Rhines*, the proper procedure for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay this action and hold it in abeyance for a reasonable time while Petitioner's DTA action is litigated.

For the foregoing reasons, this Court should deny Respondents' motion to dismiss pending Petitioners' exhaustion of their DTA remedies in the Court of Appeals and hold this action in abeyance pending Petitioner's exhaustion of those remedies and resolution by the Supreme Court of the jurisdictional issue in *Ali* of whether the MCA unconstitutionally stripped Guantánamo prisoners of their habeas rights, or resolution by the Supreme Court of a petition seeking review of *Boumediene*.

Date: 3 May 2007                          Respectfully submitted,


                                          /s/ John C. Snodgrass
                                          Frank C. Razzano (DC360173)
                                          David L. Engelhardt (DC429886)
                                          John C. Snodgrass (DC473864)
                                          Dickstein Shapiro LLP
                                          1825 Eye Street NW
                                          Washington, DC  20006
                                          Telephone:  (202) 420-2200
                                          Fax:  (202) 420-2201

2254126.04

*Of Counsel*
Shayana Kadial (DC454248)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439

2254126.04

CERTIFICATE OF SERVICE

I hereby certify that on 3 May 2007, I filed and served the foregoing instrument, together with the Proposed Order, by causing an original (bearing ECF signature only) and two copies to be delivered to the Privilege Review Team, with one such copy to be forwarded to the following counsel for Respondents:

> Peter D. Keisler, Assistant Attorney General
> Douglas N. Letter, Terrorism Litigation Counsel
> Civil Division, Room 7268
> United States Department of Justice
> 950 Pennsylvania Avenue N.W.
> Washington, DC 20530-0001

/s/ John C. Snodgrass
John C. Snodgrass

18

2254126.04